(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HALL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HALL AND AS SUCCESSOR TRUSTEE OF THE ETHLYN LOUISE HALL FAMILY TRUST *v.* HALL ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 16–1150. Argued January 16, 2018—Decided March 27, 2018

Respondent Samuel Hall served as caretaker and legal advisor to his mother Ethlyn Hall, a property owner in the United States Virgin Islands. After falling out with Samuel, Ethlyn transferred her property into a trust and designated her daughter, petitioner Elsa Hall, as her successor trustee. Ethlyn sued Samuel and his law firm over the handling of her affairs (the "trust case"). When Ethlyn died, Elsa took Ethlyn's place as trustee and as plaintiff. Samuel later filed a separate complaint against Elsa in her individual capacity (the "individual case").

On Samuel's motion, the District Court consolidated the trust and individual cases under Federal Rule of Civil Procedure 42(a). The District Court held a single trial of the consolidated cases. In the individual case, the jury returned a verdict for Samuel, but the District Court granted Elsa a new trial. In the trust case, the jury returned a verdict against Elsa, and she filed a notice of appeal from the judgment in that case. Samuel moved to dismiss the appeal on jurisdictional grounds, arguing that the judgment in the trust case was not final and appealable because his claims against Elsa remained unresolved in the individual case. The Court of Appeals for the Third Circuit agreed and dismissed the appeal.

*Held*: When one of several cases consolidated under Rule 42(a) is finally decided, that decision confers upon the losing party the immediate right to appeal, regardless of whether any of the other consolidated cases remain pending. Pp. 4–18.

(a) Title 28 U. S. C. §1291 vests the courts of appeals with jurisdic-

tion over "appeals from all final decisions of the district courts," except those directly appealable to this Court. Under §1291, "any litigant armed with a final judgment from a lower federal court is entitled to take an appeal." *Arizona* v. *Manypenny*, 451 U. S. 232, 244. Here an appeal would normally lie from the judgment in the trust case. But Samuel argues that because the trust and individual cases were consolidated under Rule 42(a)(2), they merged and should be regarded as one case, such that the judgment in the trust case was merely interlocutory and not appealable before the consolidated cases in the aggregate are finally resolved. Pp. 4–5.

(b) Rule 42(a)(2) provides that if "actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." The meaning of the term "consolidate" in this context is ambiguous. But the term has a legal lineage stretching back at least to the first federal consolidation statute, enacted by Congress in 1813. Act of July 22, 1813, §3, 3 Stat. 21 (later codified as Rev. Stat. §921 and 28 U. S. C. §734 (1934 ed.)). That history makes clear that one of multiple cases consolidated under the Rule retains its independent character, at least to the extent it is appealable when finally resolved, regardless of any ongoing proceedings in the other cases. Pp. 5–6.

(c) Under the consolidation statute—which was in force for 125 years, until its replacement by Rule 42(a)—consolidation was understood not as completely merging the constituent cases into one, but as enabling more efficient case management while preserving the distinct identities of the cases and rights of the separate parties in them. See, *e.g., Rich* v. *Lambert,* 12 How. 347; *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285; *Stone* v. *United States,* 167 U. S. 178. Just five years before Rule 42(a) became law, the Court reiterated that, under the consolidation statute, consolidation did not result in the merger of constituent cases. *Johnson* v. *Manhattan R. Co.,* 289 U. S. 479, 496–497. This body of law supports the inference that, prior to Rule 42(a), a judgment completely resolving one of several consolidated cases was an immediately appealable final decision. Pp. 6–12.

(d) Rule 42(a) was expressly modeled on the consolidation statute. Because the Rule contained no definition of "consolidate," the term presumably carried forward the same meaning ascribed to it under the statute and reaffirmed in *Johnson*.

Samuel nonetheless asserts that "consolidate" took on a different meaning under Rule 42(a). He describes the Rule as permitting two forms of consolidation: consolidation for limited purposes and consolidation for all purposes. He locates textual authority for the former in a new provision, subsection (a)(1), which permits courts to "join for hearing or trial any or all matters at issue in the actions." And he

contends that subsection (a)(2), so as not to be superfluous, must permit the merger of cases that have been consolidated for all purposes into a single, undifferentiated case. But the narrow grant of authority in subsection (a)(1) cannot fairly be read as the exclusive source of a district court's power to consolidate cases for limited purposes, because there is much more to litigation than hearings or trials. Instead, that undisputed power must stem from subsection (a)(2). That defeats Samuel's argument that interpreting subsection (a)(2) to adopt the traditional understanding of consolidation would render it duplicative of subsection (a)(1), and that subsection (a)(2) therefore must permit courts to merge the actions into a single unit.

Moreover, a Federal Rules Advisory Committee would not take a term that had long meant that separate actions do not merge into one, and silently and abruptly reimagine the same term to mean that they do. Nothing in the pertinent Committee proceedings supports the notion that Rule 42(a) was meant to overturn the settled understanding of consolidation; the Committee simply commented that Rule 42(a) "is based upon" its statutory predecessor, "but insofar as the statute differs from this rule, it is modified." Advisory Committee's Notes on 1937 Adoption of Fed. Rule Civ. Proc. 42(a), 28 U. S. C. App., p. 887. The limited extent to which this Court has addressed consolidation since adoption of Rule 42(a) confirms that the traditional understanding remains in place. See, *e.g.*, *Bank Markazi* v. *Peterson*, 578 U. S. \_\_\_, \_\_\_–\_\_\_; *Butler* v. *Dexter*, 425 U. S. 262, 266–267.

This decision does not mean that district courts may not consolidate cases for all purposes in appropriate circumstances. But constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party. Pp. 12–17.

679 Fed. Appx. 142, reversed and remanded.

ROBERTS, C. J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 16–1150

————

## ELSA HALL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ETHLYN LOUISE HALL AND AS SUCCESSOR TRUSTEE OF THE ETHLYN LOUISE HALL FAMILY TRUST, PETITIONER *v.* SAMUEL HALL, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 27, 2018]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Three Terms ago, we held that one of multiple cases consolidated for multidistrict litigation under 28 U. S. C. §1407 is immediately appealable upon an order disposing of that case, regardless of whether any of the others remain pending. *Gelboim* v. *Bank of America Corp.*, 574 U. S. \_\_\_ (2015). We left open, however, the question whether the same is true with respect to cases consolidated under Rule 42(a) of the Federal Rules of Civil Procedure. *Id.*, at \_\_\_, n. 4 (slip op., at 7, n. 4). This case presents that question.

I

Petitioner Elsa Hall and respondent Samuel Hall are siblings enmeshed in a long-running family feud. Their mother, Ethlyn Hall, lived and owned property in the United States Virgin Islands. Samuel, a lawyer in the Virgin Islands, served as Ethlyn's caretaker and provided her with legal assistance. But trouble eventually came to

paradise, and Samuel and Ethlyn fell out over Samuel's management of Ethlyn's real estate holdings. During a visit from Elsa, Ethlyn established an *inter vivos* trust, transferred all of her property into the trust, and designated Elsa as her successor trustee. Ethlyn then moved to Miami—under circumstances disputed by the parties—to live with her daughter.

The family squabble made its way to court in May 2011. Ethlyn, acting in her individual capacity and as trustee of her *inter vivos* trust, sued Samuel and his law firm in Federal District Court (the "trust case"). Ethlyn's claims—for breach of fiduciary duty, legal malpractice, conversion, fraud, and unjust enrichment—concerned the handling of her affairs by Samuel and his law firm before she left for Florida.

Then Ethlyn died, and Elsa stepped into her shoes as trustee and accordingly as plaintiff in the trust case. Samuel promptly filed counterclaims in that case against Elsa—in both her individual and representative capacities—for intentional infliction of emotional distress, fraud, breach of fiduciary duty, conversion, and tortious interference. Samuel contended that Elsa had turned their mother against him by taking advantage of Ethlyn's alleged mental frailty. But Samuel ran into an obstacle: Elsa was not a party to the trust case in her individual capacity (only Ethlyn had been). So Samuel filed a new complaint against Elsa in her individual capacity in the same District Court (the "individual case"), raising the same claims that he had asserted as counterclaims in the trust case.

The trust and individual cases initially proceeded along separate tracks. Eventually, on Samuel's motion, the District Court consolidated the cases under Rule 42(a) of the Federal Rules of Civil Procedure, ordering that "[a]ll submissions in the consolidated case shall be filed in" the docket assigned to the trust case. App. to Pet. for Cert. A–15.

Just before the trial commenced, the District Court dismissed from the trust case Samuel's counterclaims against Elsa. Those claims remained in the individual case. The parties then tried the consolidated cases together before a jury.

In the individual case, the jury returned a verdict for Samuel on his intentional infliction of emotional distress claim against Elsa, awarding him $500,000 in compensatory damages and $1.5 million in punitive damages. The clerk entered judgment in that case, but the District Court granted Elsa a new trial, which had the effect of reopening the judgment. The individual case remains pending before the District Court.

In the trust case, the jury returned a verdict against Elsa, in her representative capacity, on her claims against Samuel and his law firm. The clerk entered judgment in that case directing that Elsa "recover nothing" and that "the action be dismissed on the merits." *Id.*, at A–12.

Elsa filed a notice of appeal from the District Court's judgment in the trust case. Samuel and his law firm moved to dismiss the appeal on jurisdictional grounds, arguing that the judgment was not final and appealable because his claims against Elsa remained unresolved in the individual case. The Court of Appeals for the Third Circuit agreed. When two cases have been consolidated for all purposes, the court reasoned, a final decision on one set of claims is generally not appealable while the second set remains pending. The court explained that it considers "whether a less-than-complete judgment is appealable" on a "case-by-case basis." 679 Fed. Appx. 142, 145 (2017). Here, the fact that the claims in the trust and individual cases had been "scheduled together and tried before a single jury" "counsel[ed] in favor of keeping the claims together on appeal." *Ibid.* The court dismissed Elsa's appeal for lack of jurisdiction.

We granted certiorari, 582 U. S. \_\_\_ (2017), and now

reverse.

## II
### A

Had the District Court never consolidated the trust and individual cases, there would be no question that Elsa could immediately appeal from the judgment in the trust case. Title 28 U. S. C. §1291 vests the courts of appeals with jurisdiction over "appeals from all final decisions of the district courts," except those directly appealable to this Court. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co.* v. *Central Pension Fund of Operating Engineers and Participating Employers*, 571 U. S. 177, 183 (2014). The archetypal final decision is "one[] that trigger[s] the entry of judgment." *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 103 (2009). Appeal from such a final decision is a "matter of right." *Gelboim*, 574 U. S., at ___ (slip op., at 1). Under §1291, "any litigant armed with a final judgment from a lower federal court is entitled to take an appeal," *Arizona* v. *Manypenny*, 451 U. S. 232, 244 (1981), which generally must be filed within 30 days, 28 U. S. C. §2107(a).

Here the jury's verdict against Elsa resolved all of the claims in the trust case, and the clerk accordingly entered judgment in that case providing that "the action be dismissed on the merits." App. to Pet. for Cert. A–12. With the entry of judgment, the District Court "completed its adjudication of [Elsa's] complaint and terminated [her] action." *Gelboim*, 574 U. S., at ___ (slip op., at 7). An appeal would normally lie from that judgment.

But, Samuel contends, there is more to the litigation than the suit Elsa pursued against him in her representative capacity. There is also his suit against her in her individual capacity, which has not yet been decided. Because the District Court consolidated the trust and

individual cases under Rule 42(a)(2), he argues, they merged and should be regarded as one case. Viewed that way, the judgment in the trust case was merely interlocutory, and more remains to be done in the individual case before the consolidated cases in the aggregate are finally resolved and subject to appeal.

## B

Rule 42(a)—entitled "[c]onsolidation"—provides that if "actions before the court involve a common question of law or fact, the court may" take one of three measures. First, the court may "join for hearing or trial any or all matters at issue in the actions." Fed. Rule Civ. Proc. 42(a)(1). Second, the court may "consolidate the actions." Rule 42(a)(2). Third, the court may "issue any other orders to avoid unnecessary cost or delay." Rule 42(a)(3). Whether the judgment entered in the trust case is an immediately appealable final decision turns on the effect of consolidation under Rule 42(a).

Samuel, looking to dictionary definitions, asserts that the "plain meaning of the phrase 'consolidate the actions' is . . . to unite two or more actions into one whole—that is, to join them into a single case." Brief for Respondents 23 (citing Black's Law Dictionary (10th ed. 2014); some internal quotation marks and alterations omitted). But the meaning of "consolidate" in the present context is ambiguous. When Rule 42(a) was adopted, the term was generally defined, as it is now, as meaning to "unite, as various particulars, into one mass or body; to bring together in close union; to combine." Webster's New International Dictionary 570 (2d ed. 1942). Consolidation can thus sometimes signify the complete merger of discrete units: "The company consolidated two branches." But the term can also mean joining together discrete units without causing them to lose their independent character. The United States, for example, is composed of States

"unite[d], as various particulars, into one mass or body," "br[ought] together in close union," or "combine[d]." Yet all agree that entry into our Union "by no means implies the loss of distinct and individual existence . . . by the States." *Texas* v. *White*, 7 Wall. 700, 725 (1869). "She consolidated her books" hardly suggests that the "books" became "book." The very metaphor Samuel offers—that consolidation "make[s] two one, like marriage"—highlights this point. Tr. of Oral Arg. 56. However dear to each other, spouses would be surprised to hear that their union extends beyond the metaphysical. This is not a plain meaning case.

It is instead about a term—consolidate—with a legal lineage stretching back at least to the first federal consolidation statute, enacted by Congress in 1813. Act of July 22, 1813, §3, 3 Stat. 21 (later codified as Rev. Stat. §921 and 28 U. S. C. §734 (1934 ed.)). Over 125 years, this Court, along with the courts of appeals and leading treatises, interpreted that term to mean the joining together—but not the complete merger—of constituent cases. Those authorities particularly emphasized that constituent cases remained independent when it came to judgments and appeals. Rule 42(a), promulgated in 1938, was expressly based on the 1813 statute. The history against which Rule 42(a) was adopted resolves any ambiguity regarding the meaning of "consolidate" in subsection (a)(2). It makes clear that one of multiple cases consolidated under the Rule retains its independent character, at least to the extent it is appealable when finally resolved, regardless of any ongoing proceedings in the other cases.

C

Lord Mansfield pioneered the consolidation of related cases in England, and the practice quickly took root in American courts. See *Mutual Life Ins. Co.* v. *Hillmon*, 145 U. S. 285, 292 (1892). In 1813, Congress authorized the

newly formed federal courts, when confronted with "causes of like nature, or relative to the same question," to "make such orders and rules concerning proceedings therein as may be conformable to the principles and usages belonging to courts for avoiding unnecessary costs or delay in the administration of justice" and to "consolidate[]" the causes when it "shall appear reasonable." §3, 3 Stat. 21. This consolidation statute applied at law, equity, and admiralty, see 1 W. Rose, A Code of Federal Procedure §823(a) (1907) (Rose), and remained in force for 125 years, until its replacement by Rule 42(a).

From the outset, we understood consolidation not as completely merging the constituent cases into one, but instead as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them. In *Rich* v. *Lambert*, 12 How. 347 (1852), for example, we considered an appeal from several consolidated cases in admiralty. The appellees, the owners of cargo damaged during shipment, raised a challenge to our jurisdiction that turned on the nature of the consolidation. At the time, we could exercise appellate jurisdiction only over cases involving at least $2,000 in controversy. The damages awarded to the cargo owners in the consolidated cases surpassed $2,000 in the aggregate, but most of the constituent cases did not individually clear that jurisdictional hurdle. *Id.,* at 352–353.

We declined to view the consolidated cases as one for purposes of appeal, concluding that we had jurisdiction only over those constituent cases that individually involved damages exceeding $2,000. *Ibid.* As we explained, "although [a consolidated] proceeding assumes the form of a joint suit, it is in reality a mere joinder of distinct causes of action by distinct parties, arising out of a common injury, and which are heard and determined, so far as the merits are concerned, the same as in the case of separate libels for each cause of action." *Id.,* at 353. Consolidation

was "allowed by the practice of the court for its conven-
ience, and the saving of time and expense to the parties."
*Ibid.*

The trial court's decree, we noted, had the effect of
individually resolving each constituent case. *Ibid.* ("The
same decree . . . is entered as in the case of separate
suits."); see Black's Law Dictionary 532 (3d ed. 1933)
("decree" is a "judgment of a court of equity or admiralty,
answering for most purposes to the judgment of a court of
common law"). Accordingly, we did "not perceive . . . any
ground for a distinction as to the right of appeal from a
decree as entered in these cases from that which exists
where the proceedings have been distinct and separate
throughout." *Rich*, 12 How., at 353; see *Hanover Fire Ins.
Co.* v. *Kinneard*, 129 U. S. 176, 177 (1889) (evaluating
appellate jurisdiction over a writ of error in one of several
consolidated cases without reference to the others).

We elaborated on the principles underlying consolida-
tion in *Mutual Life Insurance Co.* v. *Hillmon*, 145 U. S.
285. *Hillmon*, a staple of law school courses on evidence,
involved three separate actions instituted against differ-
ent life insurance companies by one Sallie Hillmon, the
beneficiary on policies purchased by her husband John.
Sallie claimed she was entitled to the sizable proceeds of
the policies because John had died while journeying
through southern Kansas with two companions in search
of a site for a cattle ranch. The three companies countered
that John was in fact still alive, having conspired with one
of the companions to murder the other and pass his corpse
off as John's, all as part of an insurance fraud scheme.
The trial court consolidated the cases and tried them
together. *Id.,* at 285–287.

The court, for purposes of determining the number of
peremptory juror challenges to which each defendant was
entitled, treated the three cases as though they had
merged into one. *Ibid.* On appeal we disagreed, holding

that each defendant should receive the full complement of peremptory challenges. *Id.,* at 293. That was because, "although the defendants might lawfully be compelled, at the discretion of the court, to try the cases together, the causes of action remained distinct, and required separate verdicts and judgments; and no defendant could be deprived, without its consent, of any right material to its defence . . . to which it would have been entitled if the cases had been tried separately." *Ibid.* On remand, one case settled, and a consolidated trial of the others "result[ed] in separate judgments" for Sallie. *Connecticut Mut. Life Ins. Co.* v. *Hillmon*, 188 U. S. 208, 209 (1903).

In *Stone* v. *United States*, 167 U. S. 178, 189 (1897), we held that a party appealing from the judgment in one of two cases consolidated for trial could not also raise claims with respect to the other case. John Stone was the sole defendant in one case and one of three defendants in the other. *Id.,* at 179–181. After a consolidated trial, the jury returned a verdict in the case against Stone alone; its verdict in the multidefendant case was set aside. *Id.,* at 181. Stone appealed from the judgment in his case, arguing that the failure to grant a peremptory challenge in the multidefendant case affected the jury's verdict in his. *Id.,* at 189. We rejected that claim, punctiliously respecting the distinction between the constituent cases. There was "no merit in the objection," we said, because in the case before us Stone had "had the benefit of the three peremptory challenges" to which he was entitled in that case. *Ibid.*; see *Stone* v. *United States*, 64 F. 667, 672 (CA9 1894) ("The two cases, although consolidated, were separate and distinct. Defendant had exercised all the rights and privileges he was entitled to in this case.").

And just five years before Rule 42(a) became law, we reiterated that, under the consolidation statute, consolidation did not result in the merger of constituent cases. *Johnson* v. *Manhattan R. Co.,* 289 U. S. 479, 496–497

(1933).  A major case of its day, *Johnson* arose from the
"financial embarrassment" during the Great Depression of
two companies involved in operating the New York sub-
way system.  *Johnson* v. *Manhattan R. Co.*, 61 F. 2d 934,
936 (CA2 1932).  In the resulting litigation, the District
Court consolidated two suits, apparently with the intent to
"effect an intervention of the parties to the [first suit] in
the [second] suit"—in other words, to make the two suits
one.  *Id.*, at 940.  Judge Learned Hand, writing for the
Second Circuit on appeal, would have none of it: "consoli-
dation does not merge the suits; it is a mere matter of
convenience in administration, to keep them in step.  They
remain as independent as before."  *Ibid.*  We affirmed,
relying on *Hillmon* and several lower court cases reflecting
the same understanding of consolidation.  *Johnson*, 289
U. S., at 497, n. 8.  We explained once more that "consoli-
dation is permitted as a matter of convenience and econ-
omy in administration, but does not merge the suits into a
single cause, or change the rights of the parties, or make
those who are parties in one suit parties in another."  *Id.,*
at 496–497.

Decisions by the Courts of Appeals, with isolated depar-
tures,\* reflected the same understanding in cases involv-
ing all manners of consolidation.  See, *e.g., Baltimore S. S.
Co., Inc.* v. *Koppel Indus. Car & Equip. Co.*, 299 F. 158,
160 (CA4 1924) ("the consolidation for convenience of trial
did not merge the two causes of action" or "deprive either

———————

*See, *e.g., Edward P. Allis Co.* v. *Columbia Mill Co.*, 65 F. 52, 54
(CA8 1894) (involving two suits "consolidated, and tried as one action,"
with the "complaint in the first suit . . . treated as a counterclaim
interposed in the second suit").  State practice was varied.  Compare,
*e.g., East Bay Municipal Util. Dist.* v. *Kieffer*, 99 Cal. App. 240, 263
(1929) (denial of rehearing) ("By such consolidation the three proceed-
ings became one proceeding and should have been determined by a
single verdict, 'a single set of findings and a single judgment.'"), with
*Missouri Pac. R. Co.* v. *Helmert*, 196 Ark. 1073, 121 S. W. 2d 103 (1938)
(consolidated cases resulted in separate judgments).

party of any right or relieve it of any burden incident to the libel or cross-libel as a separate proceeding"); *Taylor* v. *Logan Trust Co.*, 289 F. 51, 53 (CA8 1923) (parties to one constituent case could not appeal orders in the other because "consolidation did not make the parties to one suit parties to the other"; cited in *Johnson*); *Toledo, St. L. & K. C. R. Co.* v. *Continental Trust Co.*, 95 F. 497, 506 (CA6 1899) (consolidation "operates as a mere carrying on together of two separate suits supposed to involve identical issues" and "does not avoid the necessity of separate decrees in each case"; cited in *Johnson*).

One frequently cited case illustrates the point. In *Adler* v. *Seaman*, 266 F. 828, 831 (CA8 1920), the District Court "sought to employ consolidation as a medium of getting the two independent suits united," but the Court of Appeals made clear that the consolidation statute did not authorize such action. The court explained that constituent cases sometimes "assume certain natural attitudes toward each other, such as 'in the nature of' a cross-bill or intervention." *Id.,* at 838. Be that as it may, the court continued, "this is purely a rule of convenience, and does not result in actually making such parties defendants or interveners in the other suit." *Ibid.* The court described "the result of consolidation" as instead "merely to try cases together, necessitating separate verdicts and judgments or separate decrees," and to "leave" the constituent cases "separate, independent action[s]." *Id.,* at 838, 840.

Treatises summarizing federal precedent applying the consolidation statute also concluded that consolidated cases "remain distinct." 1 Rose §823(c), at 758. They recognized that consolidated cases should "remain separate as to parties, pleadings, and judgment," W. Simkins, Federal Practice 63 (rev. ed. 1923), and that "[t]here must be separate verdicts, judgments or decrees, even although the consolidating party wished for one verdict," 1 Rose §823(c), at 758; see also G. Virden, Consolidation Under

Rule 42 of the Federal Rules of Civil Procedure, in 141 F. R. D. 169, 173–174 (1992) (Virden) ("as of 1933 and the *Johnson* case of that year, it was well settled that consolidation in the federal courts did not merge the separate cases into a single action").

Several aspects of this body of law support the inference that, prior to Rule 42(a), a judgment completely resolving one of several consolidated cases was an immediately appealable final decision. We made clear, for example, that each constituent case must be analyzed individually on appeal to ascertain jurisdiction and to decide its disposition—a compartmentalized analysis that would be gratuitous if the cases had merged into a single case subject to a single appeal. We emphasized that constituent cases should end in separate decrees or judgments—the traditional trigger for the right to appeal, for which there would be no need if an appeal could arise only from the resolution of the consolidated cases as a whole. We explained that the parties to one case did not become parties to the other by virtue of consolidation—indicating that the right of each to pursue his individual case on appeal should not be compromised by the litigation conduct of the other. And, finally, we held that consolidation could not prejudice rights to which the parties would have been due had consolidation never occurred. Forcing an aggrieved party to wait for other cases to conclude would substantially impair his ability to appeal from a final decision fully resolving his own case—a "matter of right," *Gelboim*, 574 U. S., at ___ (slip op., at 1), to which he was "entitled," *Manypenny*, 451 U. S., at 244.

## D

Against this background, two years after *Johnson*, the Rules Advisory Committee began discussion of what was to become Rule 42(a). The Rule, which became effective in 1938, was expressly modeled on its statutory predecessor,

the Act of July 22, 1813. See Advisory Committee's Notes on 1937 Adoption of Fed. Rule Civ. Proc. 42(a), 28 U. S. C. App., p. 887. The Rule contained no definition of "consolidate," so the term presumably carried forward the same meaning we had ascribed to it under the consolidation statute for 125 years, and had just recently reaffirmed in *Johnson.* See Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947) ("if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it"); cf. *Class* v. *United States*, 583 U. S. ___, ___ (2018) (slip op., at 10) (Federal Rule of Criminal Procedure 11(a)(2) did not silently alter existing doctrine established by this Court's past decisions).

Samuel nonetheless asserts that there is a significant distinction between the original consolidation statute and Rule 42(a). The statute authorized district courts to "consolidate" related "causes when it appears reasonable to do so" or to "make such orders and rules . . . as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice." 28 U. S. C. §734 (1934 ed.). Rule 42(a) permits district courts not only to "consolidate the actions" (subsection (a)(2)) and "issue any other orders to avoid unnecessary cost or delay" (subsection (a)(3)), but also to "join for hearing or trial any or all matters at issue in the actions" (subsection (a)(1)).

Whatever "consolidate" meant under the statute, Samuel posits, it took on a different meaning under Rule 42(a) with the addition of subsection (a)(1). Samuel describes the Rule as "permit[ting] two forms of consolidation": consolidation that "extend[s] only to certain proceedings," such as discovery, and consolidation "for all purposes." Brief for Respondents 4–5. He locates textual authority for the former in subsection (a)(1), which he says empowers courts to "join[] multiple actions for procedural purposes." *Id.,* at 23. In light of this broad grant of authority,

he contends, subsection (a)(2) must provide for something more if it is not to be superfluous. And Samuel sees that something more as the ability to merge cases that have been consolidated for "all purposes" into a single, undifferentiated case—one appealable only when all issues in each formerly distinct case have been decided. See *id.,* at 22–24 (to "consolidate" separate actions is "to join them into a single case" or "meld [them] into a single unit" (alterations omitted)).

We disagree. It is only by substantially overreading subsection (a)(1) that Samuel can argue that its addition compels a radical reinterpretation of the familiar term "consolidate" in subsection (a)(2). The text of subsection (a)(1) permits the joining of cases only for "hearing or trial." That narrow grant of authority cannot fairly be read as the exclusive source of a district court's power to "join[] multiple actions for procedural purposes." Brief for Respondents 23. There is, after all, much more to litigation than hearings or trials—such as motions practice or discovery. A district court's undisputed ability to consolidate cases for such limited purposes must therefore stem from subsection (a)(2). That defeats Samuel's argument that interpreting subsection (a)(2) to adopt the traditional understanding of consolidation would render it "wholly duplicative of [subsection] (a)(1)," and that subsection (a)(2) "therefore must permit courts . . . to 'consolidate' the actions *themselves* into a single unit." *Id.,* at 23–24. Samuel's reinterpretation of "consolidate" is, in other words, a solution in search of a problem.

We think, moreover, that if Rule 42(a) were meant to transform consolidation into something sharply contrary to what it had been, we would have heard about it. Congress, we have held, "does not alter the fundamental details" of an existing scheme with "vague terms" and "subtle device[s]." *Whitman* v. *American Trucking Assns., Inc.,* 531 U. S. 457, 468 (2001); cf. *Class*, 583 U. S., at ___

(slip op., at 10). That is true in spades when it comes to the work of the Federal Rules Advisory Committees. Their laborious drafting process requires years of effort and many layers of careful review before a proposed Rule is presented to this Court for possible submission to Congress. See Report of Advisory Committee on Rules for Civil Procedure (Apr. 1937) (describing the exhaustive process undertaken to draft the first Federal Rules of Civil Procedure). No sensible draftsman, let alone a Federal Rules Advisory Committee, would take a term that had meant, for more than a century, that separate actions do not merge into one, and silently and abruptly reimagine the same term to mean that they do.

Similarly, nothing in the pertinent proceedings of the Rules Advisory Committee supports the notion that Rule 42(a) was meant to overturn the settled understanding of consolidation. See *United States* v. *Vonn*, 535 U. S. 55, 64, n. 6 (2002) (Advisory Committee Notes are "a reliable source of insight into the meaning of a rule"). In this instance, the Committee simply commented that Rule 42(a) "is based upon" its statutory predecessor, "but insofar as the statute differs from this rule, it is modified." Advisory Committee's Notes on 1937 Adoption of Fed. Rule Civ. Proc. 42(a), 28 U. S. C. App., at 887. The Committee did not identify any specific instance in which Rule 42(a) changed the statute, let alone the dramatic transformation Samuel would have us recognize. See Virden 174–181 (evaluating the history of the development of Rule 42(a) and finding no evidence that the Committee intended a shift in meaning along the lines proposed by Samuel). This is significant because when the Committee intended a new rule to change existing federal practice, it typically explained the departure. See, *e.g.,* Advisory Committee's Notes on 1937 Adoption of Fed. Rule Civ. Proc. 4, 28 U. S. C. App., p. 747 (a predecessor statute "is substantially continued insofar as it applies to a sum-

mons, but its requirements as to teste of process are superseded"); Advisory Committee's Notes on 1937 Adoption of Fed. Rule Civ. Proc. 18, 28 U. S. C. App., p. 802 ("In respect to fraudulent conveyances the rule changes the former rule requiring a prior judgment against the owner . . . to conform to the provisions of the Uniform Fraudulent Conveyance Act, §§ 9 and 10.").

As a leading treatise explained at the time, through consolidation under Rule 42(a) "one or many or all of the phases of the several actions may be merged. But merger is never so complete in consolidation as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately." 3 J. Moore & J. Friedman, Moore's Federal Practice §42.01, pp. 3050–3051 (1938). Thus, "separate verdicts and judgments are normally necessary." *Id.*, at 3051, n. 12.

The limited extent to which this Court has addressed consolidation since adoption of Rule 42(a) confirms the traditional understanding. Just recently in *Bank Markazi* v. *Peterson*, 578 U. S. ___, ___–___ (2016) (slip op., at 19–20), for example, the Court determined that cases "consolidated for administrative purposes at the execution stage . . . were not independent of the original actions for damages and each claim retained its separate character." The Court quoted as authority a treatise explaining that "actions do not lose their separate identity because of consolidation." *Id.,* at ___ (slip op., at 20) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure §2382, p. 10 (3d ed. 2008) (Wright & Miller)).

In *Butler* v. *Dexter*, 425 U. S. 262, 266–267 (1976) (*per curiam*), we dismissed an appeal because the constitutional question that supplied our jurisdiction had been raised not in the case before us, but instead only in other cases with which it had been consolidated. We explained that "[e]ach case . . . must be considered separately to determine whether or not this Court has jurisdiction to consider

its merits". *Id.*, at 267, n. 12; see *Rich*, 12 How., at 352–353. And in *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U. S. 682, 735, and n. 22 (1976) (Marshall, J., dissenting), four dissenting Justices—reaching an issue not addressed by the majority—cited *Johnson* for the proposition that actions are "not merged" and do "not lose their separate identities because of . . . consolidation" under Rule 42(a).

In the face of all the foregoing, we cannot accept Samuel's contention that "consolidate" in Rule 42(a) carried a very different meaning—with very different consequences—than it had in *Johnson*, just five years before the Rule was adopted.

None of this means that district courts may not consolidate cases for "all purposes" in appropriate circumstances. District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases. See 9A Wright & Miller §2383 (collecting cases). What our decision does mean is that constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party. That is, after all, the point at which, by definition, a "district court disassociates itself from a case." *Swint* v. *Chambers County Comm'n*, 514 U. S. 35, 42 (1995). We thus express no view on any issue arising prior to that time.

\*    \*    \*

The normal rule is that a "final decision" confers upon the losing party the immediate right to appeal. That rule provides clear guidance to litigants. Creating exceptions to such a critical step in litigation should not be undertaken lightly. Congress has granted us the authority to prescribe rules "defin[ing] when a ruling of a district court is final for the purposes of appeal under" §1291, 28 U. S. C. §2072(c), and we have explained that changes with respect to the meaning of final decision "are to come from rule-

making, . . . not judicial decisions in particular controversies," *Microsoft Corp.* v. *Baker*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 15). If, as Samuel fears, our holding in this case were to give rise to practical problems for district courts and litigants, the appropriate Federal Rules Advisory Committees would certainly remain free to take the matter up and recommend revisions accordingly.

Rule 42(a) did not purport to alter the settled understanding of the consequences of consolidation. That understanding makes clear that when one of several consolidated cases is finally decided, a disappointed litigant is free to seek review of that decision in the court of appeals.

We reverse the judgment of the Court of Appeals for the Third Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*