**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-11197

————————————————

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

*versus*

ON POINT GLOBAL LLC, et. al.,

    a limited liability company,
    d.b.a. On Point,

*Defendants,*

BURTON KATZ,

    individually and as an Officer of Bella Vista Media Ltd.,
    f.k.a. License America Media Series LLC
    f.k.a. Chametz Media LLC, Direct Market LLC,
    f.k.a. Eagle Media LLC,
    f.k.a. GNR Media LLC,
    f.k.a. MBL Media Ltd., Inc.,
    f.k.a. On Point Global LLC,
    d.b.a. On Point, On Point Guides LLC,
    f.k.a. Rogue Media Services LLC,
    f.k.a. Orange Grove Media LLC,
    f.k.a. Waltham Technologies LLC,

2                      Opinion of the Court                      23-11197

a.k.a. Bronco Holdings Family LP,
a.k.a. Cambridge Media Series LLC,
BRENT LEVISON,
individually and as an Officer of Bal Family LP,
Bella Vista Media Ltd.,
d.b.a. BV Media, Bring Back The Magic Media LLC,
d.b.a. Cambridge Media Series LLC
f.k.a. License America Media Series LLC,
f.k.a. Chametz Media LLC,
f.k.a. Direct Market LLC,
f.k.a. Eagle Media LLC,
f.k.a. GNR Media LLC,
f.k.a. MBL Media Ltd., Inc.,
f.k.a. On Point Global LLC,
d.b.a. On Point, and On Point Guides LLC,
f.k.a. Rogue Media Services LLC,

*Defendants-Appellants.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-25046-RNS

————————————————

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

This appeal involves two related cases—one in which the Appellants were found liable under the Federal Trade Commission Act ("FTC Act") at the summary judgment stage for unfair and deceptive consumer business practices; and a second pre-existing case in which the district court imposed sanctions for violating a prior injunction against the Appellants for future FTC Act violations. The Appellants, Burton Katz and Brent Levison, challenge both the

district court's grant of summary judgment and imposition of sanctions. After a thorough review of the record and the parties' briefs and, with the benefit of oral argument, we dismiss the appeal for lack of jurisdiction.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

In 2014, the FTC sued Katz in district court for operating a deceptive scheme that placed unauthorized charges on consumers' mobile phone bills. *FTC v. Acquinity Interactive, LLC*, No. 14-cv-60166 (S.D. Fla. 2014) (hereinafter the "*Acquinity* case"). Katz settled the case and stipulated to a final judgment against him. As part of its judgment in the *Acquinity* case, the district court permanently enjoined Katz from "making, or assisting others in making" any "false or misleading material representation[s]." The injunction, which required Katz to submit compliance reports for ten years, also barred "all other persons in active concert or participation with [Katz], who receive actual notice of this Order, whether acting directly or indirectly" from similarly "making, or assisting others in making," any "false or misleading representation[s]" about consumers' obligations to pay for "any product or service."

While the *Acquinity* case was still pending, Katz created a new company called On Point Global ("On Point") with Levison,

---

[1] Katz and Levison dispute the accuracy and framing of some facts that we summarize herein. As discussed below, we lack jurisdiction over this appeal. Given the lack of jurisdiction, we summarize the district court's findings without resolving these disputes.

an attorney, and other partners.  Katz was On Point's CEO, and Levison was On Point's Chief Administrative Officer, Senior Vice President of Products, and General Counsel.

On Point operated various types of websites, the most lucrative one being paid-guide websites.  Similar in appearance to state government websites, the On Point websites offered to guide customers, for a fee, through the process of getting services such as renewing one's license or car registration.  However, rather than offering hands-on guidance through those processes, On Point merely provided its customers with a .pdf guide containing information about the selected service.  From 2017 through 2019, On Point made over $85 million in profit from consumers who bought these paid guides.

On Point also operated websites aimed at individuals seeking public benefits such as the Supplemental Nutrition Assistance Program, formerly known as Food Stamps, or housing assistance.  A consumer who went to one of those websites was invited to "Find [O]ut if [They] Qualify" for the public benefit by entering sensitive personal information, such as their medical information, household income, and health insurance details.  After submitting their personal information, consumers received a .pdf brochure with general information about the selected benefits.  On Point then sold those consumers' private data to third parties.  In 2019, On Point made over $17 million in revenue from selling its customers' personal information that it had obtained through these sites.

In 2019, while reviewing one of Katz's compliance reports in the *Acquinity* case, the FTC learned of On Point's existence. Following an investigation , the FTC sued Katz, Levison, and over fifty other corporate and individual defendants from On Point in a separate district court action—hereinafter referred to as the "*On Point* case"—for deceiving consumers in violation of Section 5(a) of the FTC Act.

The district court preliminarily enjoined Katz, Levison, and other defendants from continuing to operate the On Point websites. We largely upheld that ruling on appeal, albeit with modifications to the relief in light of intervening Supreme Court caselaw. *FTC v. On Point Cap. Partners, LLC*, 17 F.4th 1066, 1079–80 (11th Cir. 2021). As the *On Point* case continued in the district court, the FTC initiated contempt proceedings in the *Acquinity* case based on Katz's misrepresentations—aided and abetted by Levison—to consumers through On Point's websites. The two cases were never consolidated but, by this point, became procedurally intertwined.

Ultimately, on September 29, 2021, the district court granted summary judgment in the *On Point* case against Katz and Levison. The district court determined that the websites were deceptive because of the language used on the websites, the confusing or misleading disclaimers, the high rate of refunds to consumers, and On Point's active efforts to hide customers' complaints of fraud. The district court permanently enjoined Katz and Levison from committing future false or misleading representations, restricted them

from collecting and selling consumer information, and imposed certain recordkeeping and compliance reporting practices on them.

Also on September 29, 2021, the same day as the *On Point* summary judgment decision, the district court entered a separate order in the *Acquinity* case holding Katz and Levison in contempt for violating the permanent injunction against operating a new deceptive practice, referencing its contemporaneous order in the *On Point* case. The court explained that the 2014 *Acquinity* injunction was valid and lawful. Given the outcome in the *On Point* case, the district court found On Point's websites violated the injunction in the *Acquinity* case. The court found Katz liable for contempt because he exercised actual control of the scheme. As for Levison, the court determined that he knowingly aided and abetted Katz in the misrepresentations and had actual notice of the injunction even though he had not been a party to the *Acquinity* suit.

On November 16, 2021, after conducting a bench trial, the district court found Katz, Levison, and various corporate defendants[2] jointly-and-severally liable for at most $102 million, with the final amount to be determined through a process in which harmed consumers could file individual claims and be wholly compensated. The court ordered a receiver to establish a victim "opt-in" claims

---

[2] The "corporate defendants" are On Point Global LLC; On Point Employment LLC; On Point Guides LLC f/k/a/ Rogue Media Services LLC; Waltham Technologies LLC; Cambridge Media Series LLC f/k/a/ License America Media Series LLC; Issue Based Media LLC; DG DMV LLC; Direct Market LLC; and Bronco Family Holdings LP a/k/a Bronco Holdings Family LP.

distribution process and, several weeks later, the receiver proposed a plan that the district court ultimately approved in February 2022. Katz and Levison did not appeal the contempt ruling at this point.

More than one year later, on March 13, 2023, the receiver completed the claims process. Neither Katz nor Levison sought a stay in the *Acquinity* litigation during the receivership process. The total amount in sanctions was $19.5 million, which constituted both victim compensation and the receivership's administrative costs. The receiver collected more than $30 million from the corporate defendants to satisfy that sum. Neither Katz nor Levison contributed any of their assets to the victim fund. On March 14, 2024, the district court directed the receiver to notify the court when all remaining distributions to victims had been completed and instructed the corporate defendants to inform the court when all the monetary relief for the civil contempt order had been satisfied. The receiver ultimately compensated all victims who came forward with the $30 million the corporate defendants had paid.

On April 12, 2023, Katz and Levison filed their notice appealing the district court decision in the *On Point* case. They did not move to expedite their appeal or to stay the receivership's actions during the pendency of their appeal. More than a year after they filed the appeal, the receiver completed all distributions to the victims. On June 21, 2024, the district court issued its last order in the *Acquinity* case, which confirmed that all the funds had been distributed, and the court closed the receivership.

On appeal, Katz and Levison maintain the district court erred in granting summary judgment in the *On Point* case because material issues remained as to whether the websites were deceptive. Second, they argue that the district court's contempt sanctions for violating the injunction in the *Acquinity* case: (i) were improper and punitive; (ii) erroneously included Levison, a non-party to the *Acquinity* case; (iii) violated their due process rights; and (iv) were miscalculated.

## II.    DISCUSSION

Before we can resolve the substantive merits of Katz and Levison's arguments on appeal, we must first establish that we have jurisdiction over the appeal. *Friends of the Everglades v. E.P.A.*, 699 F.3d 1280, 1288–89 (11th Cir. 2012); *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) ("We have a threshold obligation to ensure that we have jurisdiction to hear an appeal."). We may raise concerns regarding our jurisdiction *sua sponte* and we review jurisdictional issues *de novo*. *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1304–05 (11th Cir. 2011); *Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012).

A. *We Lack Appellate Jurisdiction Over the On Point Appeal.*

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement," and when a notice of appeal is untimely filed, "circuit precedent squarely dictates" that we must dismiss the appeal. *Green v. Drug Enf't Admin.*, 606 F.3d 1296, 1300,

1302 (11th Cir. 2010) (quoting *Bowles v. Russell*, 551 U.S. 205, 214 (2007)).

If one of the parties to a civil case is a federal agency, then a party must file a notice of appeal within 60 days after the judgment or order appealed from is entered. 28 U.S.C. § 2107(b)(2); FED. R. APP. P. 4(a)(1)(B)(ii). However, "[e]very judgment and amended judgment must be set out in a separate document." FED. R. CIV. P. 58(a). Notwithstanding Rule 58(a)'s requirement, a judgment is deemed entered under Federal Rule of Appellate Procedure 4(a) either when it is set forth on a separate document or 150 days have passed from entry of the order on the civil docket, whichever is earlier. FED. R. APP. P. 4(a)(7)(A). A party may move for additional time to file a notice of appeal under certain circumstances. FED. R. APP. P. 4(a)(5), (6); 28 U.S.C. § 2107(c). Rule 4(a)(5), for instance, allows a district court to extend the time for filing a notice of appeal if the party moves for an extension within 30 days after the expiration of the appeal period. In addition, Rule 4(a)(6) provides that a court may reopen the appeal period if it finds that the party did not receive formal notice of entry of the judgment or order within 21 days of entry. In civil cases, we do not treat a late notice of appeal as a motion for extension of time under Rule 4(a)(5). *Parker v. Strickland*, 728 F.2d 1406, 1407 (11th Cir. 1984).

In order to determine whether Katz and Levison's appeal was timely, we must first determine whether the *Acquinity* and *On Point* cases merged into one matter. Cases do not readily lose their separate identities. Even cases that are formally consolidated

under Rule 42 of the Federal Rules of Civil Procedure do not necessarily merge to the extent that they each lose their independent nature. *Hall v. Hall*, 584 U.S. 59, 77 (2018). Moreover, it is well-settled that a district court's decision to resolve multiple cases in tandem for purposes of judicial efficiency does not cause a case to lose its identity. *Bank Markazi v. Peterson*, 578 U.S. 212, 232–33 & n.25 (2016) (collecting cases).

Here, the district court never consolidated the *On Point* case and the *Acquinity* case under Rule 42. The district court's language throughout its decisions repeatedly distinguished the *"On Point* matter" from the *"Acquinity* matter" and shows that the court considered and treated the two cases as independent of each other. Moreover, the cases proceeded under separate dockets until after the *On Point* trial. Understandably, the cases were related because the sanctions award in the *Acquinity* case was based on the violations Katz and Levinson committed in the *On Point* case. However, when examined as a whole, the lack of formal consolidation, the district court's language that repeatedly emphasized that the cases remained independent, and the separate dockets until the court entered on the *On Point* docket the final judgment in both cases and the subsequent decisions about the claims process and receivership termination, all show that the cases did not merge. *Cf. Hall*, 584 U.S. at 64, 77. Given that *On Point* and *Acquinity* were separate, unconsolidated cases, a final decision in either case was immediately appealable by the losing party. 28 U.S.C. § 1291.

Accordingly, the district court's amended permanent injunction, issued on November 16, 2021, was the final decision in the *On Point* case. That order marked "the point at which, by definition, [the] 'district court disassociate[d] itself from [the *On Point*] case.'" *Hall*, 584 U.S. at 77 (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). Because the district court's injunction order was not set forth in a separate document, Katz and Levison had until June 14, 2022, to file their notice of appeal. *See* FED. R. CIV. P. 58(a); FED. R. APP. P. 4(a)(1)(B)(ii) & 4(a)(7)(A). Katz and Levison, however, did not appeal the district court's judgment in the *On Point* case until April 12, 2023—almost ten months after the statutory time limit. Therefore, their appeal in that case was untimely. In addition, Katz and Levison are not entitled to relief under Rule 4(a)(5) because they did not seek an extension prior to the June 14 deadline, nor under Rule 4(a)(6) because they did not indicate in their notice of appeal that they failed to receive timely notice of the court's amended permanent injunction. *See* FED. R. APP. P. 4(a)(5), (6); *Parker*, 728 F.2d at 1407. Consequently, we lack jurisdiction to review the amended permanent injunction the district court imposed in the *On Point* case. *See Green*, 606 F.3d at 1300.

### B. Katz and Levison's Appeal of the Contempt Order in the Acquinity Case is Moot.

A separate jurisdictional problem prohibits our review of Katz and Levison's appeal of the contempt order in the *Acquinity* case. We have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before" us. *Zinni*

*v. ER Sols., Inc.*, 692 F.3d 1162, 1166 (11th Cir. 2012) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* (quoting *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009)); *see also S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC*, 583 F.3d 750, 754 (11th Cir. 2009) ("When 'no action by this court could change what has been done,' an appeal is moot." (alteration adopted) (quoting *Newman v. Alabama*, 683 F.2d 1312, 1317 (11th Cir. 1982))). However, "[a] case does not become moot simply because [we are] unable completely to restore the parties to the *status quo ante*." *SunAm. Corp. v. Sun Life Assur. Co. of Can.*, 77 F.3d 1325, 1333 (11th Cir. 1996) (citing *Church of Scientology*, 506 U.S. at 12–14). A partial remedy is sufficient to prevent mootness. *Id.* (citation omitted).

A dispute becomes moot when a defendant fully satisfies the judgment against them, thereby resolving any legal dispute. *Cf. Zinni*, 692 F.3d at 1166–67. In the context of "a compensatory civil contempt sanction, . . . the contempt ends when the contemnor pays the full amount." *FTC v. Leshin*, 719 F.3d 1227, 1234 (11th Cir. 2013) (citing *Clark v. Boynton*, 362 F.2d 992, 998 (5th Cir. 1966)).[3] "We have long recognized that the payment of a civil fine, at least where there is no objective manifestation it is conditional, renders

---

[3] All Fifth Circuit decisions issued by the close of business on September 30, 1981, are binding precedent of this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

23-11197             Opinion of the Court                    13

moot any appeal of the sanction." *RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1315 (11th Cir. 2013) (collecting cases).[4]

Here, the district court's order made Katz, Levison, and the corporate defendants jointly-and-severally liable to compensate the victims of their deceptive scheme through the receivership. On appeal, Katz and Levison maintain that the claims process is ongoing, the receiver has not completed making payments, and the receiver possesses up to $1.5 million in unpaid claims. Yet, the record shows that the corporate defendants satisfied the entire sanctions award and, thus, "purged . . . the finding of civil contempt" for themselves, Katz, and Levison. *Leshin*, 719 F.3d at 1233. By July 2024, the district court had terminated the receivership because all claimants had been paid and the estate had no further "business or assets."

---

[4] Parties subject to contempt sanctions are not trapped between a rock and a hard place. In order to avoid a mootness problem, a party subject to contempt sanctions may seek to stay the receiver's asset distribution plan. *See S.F. Residence Club*, 583 F.3d at 755 (citation omitted) (recognizing an appeal is moot when "the court of appeals is powerless to grant" the relief sought); *see also* 13B Wright & Miller's Federal Practice & Procedure § 3533.2.2 (3d. ed. 2025) ("Courts at times suggest that a stay should have been sought to avoid mootness . . . ."). Absent that situation, we have often found appeals from contempt sanctions moot when the appellant could have sought to stay the disbursement of money but did not. This is because, at least in securities-fraud receiverships, a case is "unreviewable on appeal" when the "assets from the receivership" are distributed and unrecoverable. *SEC v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019) (quoting and adopting the reasoning in *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001)).

Therefore, we can provide Katz and Levison no relief in their appeal in the *Acquinity* case. *See Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022) ("[W]e must ensure—up until the moment our mandate issues—that intervening events have not mooted the appeal by preventing us from granting any effectual relief whatever in favor of the appellant." (citations and quotations omitted)). First, because their obligations under the contempt order have been "purged," there is no effectual relief we can offer them. *Leshin*, 719 F.3d at 1234. Second, the receivership is over, and even a potentially successful challenge to the receivership's structure or procedures cannot "change what has been done." *S.F. Residence Club*, 583 F.3d at 754 (quoting *Newman*, 683 F.2d at 1317). Third, an opinion about whether the corporate defendants should have been required to pay the funds into the receivership would "not affect the rights of litigants in the case before us." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018) (citation and quotation marks omitted). The corporate defendants, not Katz or Levison, paid all the funds related to satisfying the contempt order.[5]

---

[5] The government frames this issue as one of standing, maintaining that Katz and Levison suffered no concrete injury. This case, though, sounds in mootness because Katz and Levison could have been required to contribute from their personal assets for the compensatory sanctions up until the point when the court held that the corporate defendants had fully purged the sanctions against all parties, a decision that occurred while Katz and Levison's appeal was pending. *See, e.g.*, *Gardner v. Mutz*, 962 F.3d 1329, 1337 (11th Cir. 2020) ("[A] plaintiff whose suit goes moot once had a 'Case' but lost it due to the march of time or intervening events, whereas the plaintiff who lacks standing never had a 'Case' to begin with.").

23-11197                Opinion of the Court                15

Even assuming we could order those funds returned, such redress would not affect Katz and Levison, who did not contribute to the now-terminated receivership process and have no right to the corporate defendants' funds. Given these circumstances, we must dismiss their appeal as moot. *Zinni*, 692 F.3d at 1166.

Finally, we are not persuaded by Levison's argument that the reputational harm to him as an attorney from the civil contempt judgment moots his appeal. Where the injury to reputation is a secondary effect to an otherwise moot action, there must be some tangible, concrete effect or else the injury is an "abstract proposition[]" over which we have no power to decide.[6] *See, e.g.*, *Pulphus v. Ayers*, 909 F.3d 1148, 1154 (D.C. Cir. 2018) (collecting cases); *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1075 (9th Cir. 2005) (discussing Supreme Court caselaw). Speculative, conclusory, or hypothetical concerns about reputational harm cannot save a case from mootness. *See generally St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 108 (2d Cir. 2025); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013); *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018).

Here, Levison fails to point to any concrete effect on his reputation. The court held Levison in contempt of the *Acquinity* order almost four years ago. Although considerable time has passed,

---

[6] We do not weigh in on the separate debate regarding whether a district court's findings of professional misconduct are appealable. *See Keach v. Cnty. of Schenectady*, 593 F.3d 218, 224 (2d Cir. 2010) (collecting cases).

Levison points to no investigation, proceeding, or professional disciplinary action arising from the contempt order.  Thus, his intangible reputational concerns do not change our conclusion that this appeal is moot.

### III.    CONCLUSION

Because Katz and Levison's appeal in the *On Point* case was untimely and because Katz and Levison's challenge to the contempt order in the *Acquinity* case is moot, we dismiss the appeal for lack of jurisdiction.

**DISMISSED.**