
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## THE ANTONIO B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM,
Plaintiff-Appellant,

**v.**

## DFS GUAM L.P.,
Defendant-Appellee.

Supreme Court Case No.: CVA19-003
Superior Court Case No.: CV0371-16
(consolidated with CV0595-16 and SP0128-16)

## OPINION

## Cite as: 2023 Guam 7

Appeal from the Superior Court of Guam
Argued and submitted on February 21, 2023
Hagåtña, Guam

Appearing for Plaintiff-Appellant:
Kathleen V. Fisher, *Esq*.
Genevieve P. Rapadas, *Esq*. (argued)
E. Christian Calvo, *Esq*.
Calvo Fisher & Jacob LLP
259 Martyr St., Ste. 100
Hagåtña, GU 96910

Appearing for Defendant-Appellee:
Maurice Suh, *Esq*. (argued)
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071

G. Patrick Civille, *Esq.*
Joyce C.H. Tang, *Esq.*
Civille & Tang, PLLC
330 Hernan Cortez Ave., Ste. 200
Hagåtña, GU 96910


**E-Received**
8/7/2023 3:41:54 PM

BEFORE: F. PHILIP CARBULLIDO, Presiding Justice; KATHERINE A. MARAMAN, Associate Justice; and JOSEPH N. CAMACHO, Justice *Pro Tempore*.

**PER CURIAM:**

[1]     This court is no stranger to the parties in this case.  They have come before this court several times already, and, we surmise, they will have future issues to litigate.  But the question we are asked to answer today is a narrow one: Did the Arbitration Panel, convened at the behest of DFS Guam L.P. ("DFS"), act within its authority in ruling for DFS?  We conclude it did, and therefore affirm the decision of the trial court confirming the Arbitration Award.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     Though the question we are asked to decide is fairly straightforward, the facts underlying that question can get easily tangled.  To better understand the present case, it is helpful to establish at the outset that in the proceedings below, Plaintiff-Appellant Antonio B. Won Pat International Airport Authority, Guam ("GIAA") and Defendant-Appellee DFS Guam L.P. ("DFS") have been litigating two contracts, which spawned three separate cases before everything was consolidated into one proceeding.[1]  Two relate to an Arbitration Award issued on May 6, 2015 (CV0371-16 and SP0128-16).  These cases (the "Arbitration Actions") concern the Main Concession Agreement, a contract signed by both parties.  Conversely, the Government Claims Act case ("Government Claims Action") is solely about the Mama Bear Agreement (CV0595-16).  While all the cases involve similar and often the same facts, the Arbitration Actions focus on a separate contract compared to the Government Claims Action.  This matter involves the Arbitration Actions and is thus focused on the Main Concession Agreement.  With that understanding, a fuller explanation of the factual and procedural history can now follow.

---

[1] There is a third contract between the parties, the so-called "Baby Bear Agreement."  However, this agreement has not been implicated by the current lawsuits, so it may be set aside for now.

**[3]** For this case, the parties began their legal relationship on November 6, 2002, when they signed a leasing agreement for commercial space at the airport called the Main Concession Agreement. This agreement covered the "main retail concession area" within the airport. Record on Appeal ("RA"),[2] tab 13 (Decl. Jay Trickett, July 11, 2016), Ex. A of Ex. 2 at 2 (Stipulated Facts, Nov. 12, 2015). One of the terms of this agreement was that DFS would post a $3,375,000 faithful performance bond, which DFS originally satisfied through two instruments. First, DFS obtained a standby letter of credit from HSBC Bank worth $2 million; then it received a surety bond issued by Travelers for $1,375,000. On September 12, 2005, DFS replaced the letter of credit from HSBC with one from Citibank in the same amount, $2 million.

**[4]** Shortly after making the bank change, DFS and GIAA entered into another agreement, this one called the Mama Bear Agreement. The Mama Bear Agreement constituted a separate leasing agreement, covering a different space at the airport, resulting from a separate request for proposal from GIAA and separate negotiations from the Main Concession Agreement. The Mama Bear Agreement had its own faithful performance bond requirement set at $250,000. Because it would be "easier," DFS proposed releasing its surety bond with Travelers and satisfying the faithful performance requirements of the two contracts through one letter of credit issued by Citibank. RA, tab 13 (Decl. Jay Trickett), Ex. 3 at 172 (Joint List Agreed Docs., Jan. 22, 2016). Thus, its existing letter of credit would be increased by $1,375,000 to cover the Travelers surety bond being released and another $250,000 for the requirement under the Mama Bear Agreement, for a total increase of $1,625,000. GIAA agreed, and the Citibank letter of

---

[2] Unless otherwise noted, the Record on Appeal refers to documents filed in what became the lead case in the consolidated proceeding: CV0371-16.

credit was amended to total $3,625,000 and referred to both agreements. RA, tab 3 (Decl. Michael Pangelinan), Ex. 1 at 7 (Arbitration Award, May 6, 2016).[3]

[5]    Both contracts contained "evergreen" provisions attached to the surety bond requirements. This refers to the fact that, in the event of a drawdown of the faithful performance bond by GIAA, DFS was responsible for replenishing the original amount of the bond. There was no cap on the evergreen provisions. So, GIAA could draw down more than the amount required by the surety bond provision for violations of the contract as long as each drawdown was less than the total bond required to be posted by the contract. At the same time, the evergreen provisions afforded DFS with a certain amount of time to secure the necessary funding. RA, tab 13 (Decl. Jay Trickett), Ex. 3 at 44, 117 (Joint List Agreed Docs.) (giving DFS ten days to offer additional security to GIAA in amount sufficient to restore Faithful Performance Bond in both contracts).

[6]    Besides the different leasing spaces and bond requirements, the two agreements also differed in how they addressed dispute resolution. The Main Concession Agreement required the parties to go through arbitration in the event of a dispute. Conversely, the Mama Bear Agreement provided that any dispute would be handled by the courts of Guam.

[7]    In 2013, GIAA alleged DFS had violated the Mama Bear Agreement. GIAA demanded Citibank pay out $2,104,582.88 for the damages it had suffered, which Citibank eventually did by drawing down on the letter of credit. At no point throughout this entire dispute has GIAA alleged that DFS violated the Main Concession Agreement; it has only ever alleged a violation of the Mama Bear Agreement. *See* RA, tab 13 (Decl. Jay Trickett), Ex. A of Ex. 2 at 7 (Stipulated Facts).

---

[3] The letter of credit would be amended once more to cover the amount required by a faithful performance bond provision of the Baby Bear Agreement. RA, tab 3 (Decl. of Michael Pangelinan), Ex. 1 at 8 (Arbitration Award, May 6, 2016).

[8]     DFS disputes that it violated the Mama Bear Agreement and, in addition, argues that GIAA violated the Main Concession Agreement by drawing down on funds reserved for the Main Concession Agreement when there was no alleged violation of that contract. So, DFS took two actions on December 4, 2014. First, it filed an administrative claim against GIAA pursuant to the Government Claims Act, arguing that it had not violated the Mama Bear Agreement. Second, DFS filed to begin arbitration proceedings against GIAA, arguing that the drawdown on the letter of credit violated the Main Concession Agreement.

[9]     GIAA denied the Government Claims Act filing. A year and a half later, DFS sued in the Superior Court, challenging this denial. The Decision and Order by the Superior Court is imprecise when it says that "DFS alleged that GIAA breached the [Main Concession Agreement]" in its Government Claims Act filing with GIAA. RA, tab 84 at 2 (Dec. & Order, Dec. 26, 2018). In its original Government Claims Act filing, as well as its government claims complaint filed in the Superior Court, DFS focused on the Mama Bear Agreement—not the Main Concession Agreement. *See* RA, tab 13 (Decl. Jay Trickett), Ex. 3 at 180, 186-87 (Joint List Agreed Docs.); CV0595-16, RA, tab 1 at 1, 13-15 (Compl. Breach Contract, July 25, 2016). DFS has been consistent in litigating the terms of the Main Concession Agreement in the Arbitration Actions while reserving its Mama Bear Agreement arguments for its Government Claims Action.

[10]    While the Government Claims Action remained pending in the Superior Court, DFS found success in arbitration. The Arbitration Panel agreed with DFS's claims that GIAA had violated the Main Concession Agreement. GIAA had argued that the Arbitration Panel did not have jurisdiction over the dispute since GIAA was alleging violations of only the Mama Bear Agreement. The Panel disagreed, finding it was only asked to review the terms of the Main

Concession Agreement. Specifically, the Panel determined that according to the Main Concession Agreement, $3,375,000 of the letter of credit issued by Citibank was reserved for issues relating only to the Main Concession Agreement. Since GIAA was only asserting claims about the Mama Bear Agreement, the Arbitration Panel held that GIAA violated the Main Concession Agreement by drawing down more than the $250,000 bond posted per the Mama Bear Agreement. The Panel was clear that it was confining its analysis to the terms of the Main Concession Agreement and disclaimed any jurisdiction over the Mama Bear Agreement.

[11]    GIAA disagreed with the Arbitration Panel's ruling. It filed a complaint to vacate the Panel's ruling. GIAA, then and now, argues that the Arbitration Panel did not have jurisdiction over the dispute because GIAA's claims were based on the Mama Bear Agreement—which required disputes to go through the courts of Guam. Appellant's Suppl. Br. at 15-16 (June 13, 2022). DFS filed an application to confirm the Arbitration Award of the Panel. The Superior Court issued an order consolidating the Arbitration Actions (both GIAA's complaint to vacate the award and DFS's petition to confirm the award) with the Government Claims Action.

[12]    On December 26, 2018, the Superior Court denied GIAA's motion to vacate the arbitration award and granted DFS's motion to confirm the award. GIAA appeals from an Amended Judgment carrying out this Decision and Order. The trial court has yet to make any substantive rulings regarding the Government Claims Action, which remains pending below.

## II. JURISDICTION

[13]    This court has jurisdiction over GIAA's appeal from the Amended Judgment, which is a final judgment under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-10 (2023)) and 7 GCA §§ 3107 and 3108(a) (2005). The Amended Judgment, however, creates finality regarding only two of three cases within the consolidated action below. The Government Claims

Action remains pending in the Superior Court. In addition, there were three motions relating to the Amended Judgment that were never explicitly disposed of: a motion for attorney's fees, a motion to stay enforcement of the judgment, and a Guam Rule of Civil Procedure ("GRCP") 12(b)(1) motion to dismiss. Though neither party contested jurisdiction, we have an independent obligation to ensure that this case is properly before us. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

[14]     First, we address the issue of appealing fewer than all of the cases within a consolidated action. In their briefs, both parties draw the court's attention to the U.S. Supreme Court's decision in *Hall v. Hall*, 138 S. Ct. 1118 (2018), to support a finding of jurisdiction. There, the Court unanimously held that when cases are consolidated under Rule 42(a) of the Federal Rules of Civil Procedure ("FRCP"), those cases "retain[] [their] independent character, at least to the extent [they are] appealable when finally resolved, regardless of any ongoing proceedings in the other cases." *Hall*, 138 S. Ct. at 1125. The Court came to this holding after analyzing both the plain text of the rule and the history of consolidation statutes and rules in the federal system. *Id.* at 1124-28. The Court held that had the Federal Rules Advisory Committee meant to overturn the decades of consolidation precedent allowing for appeals in consolidated cases, then such a decision would have been made explicit. *Id.* at 1129-30. Thus, the Court concluded that "[e]ach case . . . must be considered separately to determine whether or not [a] [c]ourt has jurisdiction to consider its merits." *Id.* at 1130-31 (first and second alterations in original) (quoting *Butler v. Dexter*, 425 U.S. 262, 267 n.12 (1976) (per curiam)).

[15]     The Supreme Court's ruling is relevant because "federal decisions that construe the federal counterparts to the Guam Rules of Civil Procedure are persuasive authority." *Gov't of*

*Guam v. O'Keefe ex rel. Estate of Torres*, 2018 Guam 4 ¶ 9. Here, the federal rule is substantially identical to the Guam rule. *Compare* Fed. R. Civ. P. 42, *with* Guam R. Civ. P. 42.

[16]     Other high courts have largely followed the U.S. Supreme Court's lead. *See Nettles v. Rumberger, Kirk & Caldwell, P.C.*, 276 So. 3d 663, 669 (Ala. 2018); *Marks v. Marks*, 262 A.3d 1135, 1138-39 (Me. 2021); *Estate of Sarge v. Quality Loan Serv. Corp.*, 432 P.3d 718, 722 (Nev. 2018); *RFB Props. II, LLC v. Deutsche Bank Tr. Co. Americas*, 247 A.3d 689, 694 (D.C. 2021). So far, only one state high court has explicitly rejected the U.S. Supreme Court's approach. *See Spence v. Sloan*, 515 P.3d 572, 580 n.6 (Wyo. 2022). That court kept its existing practice of allowing appeals within consolidated cases only when the trial court certifies that a decision is final regarding particular claims. *Id.*; *see also Nettles*, 276 So. 3d at 673 (Shaw, J., dissenting) (calling for Alabama to retain its previous rule of requiring certification before allowing an appeal in a consolidated case). This certification is to be done under a rule with an analogue in both the FRCP and the GRCP, Rule 54. *See* Fed. R. Civ. P. 54(b); Guam R. Civ. P. 54(b); *see also* Wyo. R. Civ. P. 54(b); Ala. R. Civ. P. 54(b). Unlike Wyoming (and Alabama before that state's Supreme Court's ruling in *Nettles*), this court does not have a precedent requiring certification before appeals in consolidated cases.

[17]     We find the U.S. Supreme Court's reasoning persuasive and follow its decision in *Hall* rather than join Wyoming in requiring Rule 54(b) certification. The present dispute exemplifies why appeals should be allowed in consolidated cases when there is a final, appealable result in at least one of the cases. Both parties are requesting the court to hear the case and decide the issue. The current dispute over the validity of the Arbitration Award is distinct from the separate Government Claims Action pending below. The similarity between the current cases being appealed and the remaining action does not bar an appeal. In *Roam v. Koop*, a California

appellate court held that where there were "ten separate contracts[,] . . . . each may be viewed as involving a separate primary right and thus giv[e] rise to a separate and independent cause of action" even though "they all concerned the same general subject matter."　116 Cal. Rptr. 539, 543 (Ct. App. 1974) (per curiam).　This is because "a contract gives rise to an obligation or legal duty, enforceable in an action at law."　1 Witkin Summ. Cal. Law *Contracts* § 1 (2023) (citing Cal. Civ. Code §§ 1427-1428).　On the assumption that DFS's claims are true, it would have a legal right to protect against the unauthorized drawdown of its letter of credit under the Main Concession Agreement independent of any separate obligations relating to the Mama Bear Agreement.　We therefore see no reason why we should not hear the present dispute to adjudicate whether the Main Concession Agreement was implicated or only the Mama Bear Agreement applies.

[18]　We also find that none of the pending motions below deprive the court of jurisdiction to hear the present appeal.　This court has previously stated that it has "adopt[ed] the collateral order doctrine with respect to attorney's fees."　*Data Mgmt. Res., LLC v. Off. of Pub. Accountability*, 2013 Guam 27 ¶ 41.　Thus, an order which "otherwise dispose[s] of every other claim presented in the cause of action [except for attorney's fees] . . . . [is] separately final and appealable."　*Id.* ¶ 40.

[19]　As for the pending Rule 12(b)(1) motion to dismiss, that motion became moot when the trial court granted DFS's motion to confirm the arbitration award and denied GIAA's motion to vacate the award.　An issue becomes moot when it is "no longer live or the parties lack a legally cognizable interest in the outcome."　*Tumon Partners, LLC v. Shin*, 2008 Guam 15 ¶ 37 (quoting *Town House Dep't Stores, Inc. v. Ahn*, 2000 Guam 32 ¶ 9).　The trial court denied GIAA's motion to vacate the arbitration award.　Even if that by itself did not dispose of GIAA's entire

claim in CV0371-16, the trial court also granted DFS's motion to confirm the arbitration award. The Rule 12(b)(1) motion to dismiss must be moot as the validity of the Arbitration Award is no longer a live issue in the proceeding below; the trial court has confirmed the Award. As the motion is moot, that the trial court never officially disposed of it does not prevent this court from asserting jurisdiction over the present appeal. *Cf. Abalos v. Cyfred, Ltd.*, 2009 Guam 14 ¶ 17 (allowing for some motions to be impliedly denied by other orders and/or judgments of the Superior Court).

[20]     Finally, as pointed out by GIAA, its motion to stay enforcement of the judgment pending appeal does not "go to the merits of the dispute." Appellant's Suppl. Br. at 17. Resolving this motion "will not alter the order or moot or revise decisions embodied in the order" being appealed. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988); *cf. In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 416-18 (2d Cir. 2015) (per curiam) (ruling on appeal of motion to stay enforcement proceedings despite a separate appeal pending dealing with the merits of the case). Therefore, it too is collateral to the current appeal and does not deprive this court of jurisdiction to proceed on the present dispute.

## III.  STANDARD OF REVIEW

[21]     As for Superior Court rulings concerning arbitrations, this court reviews the legal conclusions of the Superior Court *de novo* and its factual findings for clear error. *Guam YTK Corp. v. Port Auth. of Guam* ("*Guam YTK II*"), 2019 Guam 12 ¶ 27 (citing *Gov't of Guam v. PacifiCare Health Ins. Co. of Micronesia, Inc.*, 2004 Guam 17 ¶¶ 14, 16). At the same time, "an application of these general standards of review does not support vacating an arbitrator's decision absent the recognized narrow circumstances warranting vacatur." *Id.* (citing *PacifiCare*, 2004 Guam 17 ¶ 16). In evaluating an arbitration award, "courts may not review the

merits of the controversy, the validity of the arbitrator's reasoning, or the correctness of the arbitration award." *Guam YTK Corp. v. Port Auth. of Guam* ("*Guam YTK I*"), 2014 Guam 7 ¶ 58.

[22]     Unless there are grounds for vacating an arbitration award, such an award "'must' be confirmed upon motion" by the courts of Guam. *Guam YTK II*, 2019 Guam 12 ¶ 30 (quoting 7 GCA § 42A702 (2005)). The relevant grounds here are: (1) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," 7 GCA § 42A701(b)(4) (2005), and (2) where the arbitration panel exhibits a "[m]anifest disregard of the law," *Guam YTK II*, 2019 Guam 12 ¶ 29 (quoting *PacifiCare*, 2004 Guam 17 ¶ 45). Finally, "any challenge to an award based upon a lack of waiver of sovereign immunity must be pursued under 7 GCA § 42A701." *Id.* ¶ 25.

## IV.  ANALYSIS

### A.  The Arbitration Panel Had Jurisdiction to Issue an Award

[23]     GIAA's first argument is that the Arbitration Panel exceeded its powers and/or manifestly disregarded the law in hearing the dispute between GIAA and DFS. Appellant's Br. at 26-27 (Mar. 21, 2022). According to GIAA, "the parties, the arbitration panel[,] and the Superior Court all agree and have made clear that the underlying dispute between GIAA and DFS arises from a single agreement—the Mama Bear Agreement." *Id.* at 27. Because the Mama Bear Agreement requires any dispute arising out of it to be litigated in the courts of Guam, GIAA argues the Arbitration Panel had no business hearing the present dispute.

[24]     In reviewing decisions by arbitration panels, courts "are required to distinguish between issues reserved for determination by the courts and those reserved for the arbitrators." *PacifiCare*, 2004 Guam 17 ¶ 25. As to who determines arbitrability, that question is "generally

considered one for the courts, and not the arbitrators, unless the parties clearly and unmistakably reserved the question for the arbitrators." *Id.* ¶ 27. Incorporating by reference arbitral rules that reserve the authority to decide jurisdictional issues in the arbitration panel can serve as "'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020). Of the twelve federal circuits to consider the issue, "eleven . . . ha[ve] found that the incorporation of the AAA [("American Arbitration Association")] Rules (or similarly worded arbitral rules)" vests an arbitration panel with the authority to arbitrate arbitrability. *Id.* (collecting cases).

[25]    Once it has been established that an arbitration panel may rule on its own jurisdiction, its findings must be reviewed like any other decision by the panel—with deference. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). In general, "[c]ourts are loath to interfere with arbitral decisions, because to do so would diminish the efficacy of arbitration as an efficient, economical, and informal form of alternative dispute resolution." *Asia Pac. Hotel Guam, Inc. v. Dongbu Ins. Co.*, 2015 Guam 3 ¶ 15. Therefore, any review of an arbitration award is "extraordinarily narrow." *PacifiCare*, 2004 Guam 17 ¶ 16 (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). It is "only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Asia Pac. Hotel*, 2015 Guam 3 ¶ 15 (alterations in original) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).

[26]    Arbitrators exceed their powers when they "arbitrate[] a dispute that is not arbitrable in the first place." *PacifiCare*, 2004 Guam 17 ¶ 23 (quoting *State v. R.I. All. Of Soc. Servs. Emps., Loc. 580*, 747 A.2d 465, 468 (R.I. 2000)). To prove a manifest disregard of law claim:

> a party . . . must show that "the error [was] obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator,"

> that the law disregarded was "well defined, explicit, and clearly applicable," and
> that the arbitrator chose to ignore this well-defined law.

*Asia Pac. Hotel*, 2015 Guam 3 ¶ 23 (second alteration in original) (quoting *PacifiCare*, 2004 Guam 17 ¶ 46).   Finally, when "the dispute's resolution was contractually assigned to the arbitrators and they arguably construed the contract [in making a decision], that is enough [to affirm the arbitrators' decision]." *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1239 (11th Cir. 2020); *see also PacifiCare*, 2004 Guam 17 ¶ 16 (adopting the "arguably construing" the contract standard of review in reviewing arbitral decisions).

### 1. There are sufficient facts for the Arbitration Panel to conclude the Main Concession Agreement was implicated by GIAA's actions

[27]    GIAA cannot meet the high burden needed to overrule an arbitration decision.  First, it is undisputed that the Main Concession has a binding arbitration clause.  Second, GIAA does not dispute DFS's assertion that the AAA Rules, incorporated by reference by the Main Concession Agreement, delegate issues of arbitrability to arbitration panels.  Third, it was the Main Concession Agreement—not the Mama Bear Agreement—that required DFS to post a faithful performance bond worth several million dollars.  Fourth, the parties stipulated that under the Mama Bear Agreement, DFS would have ten days to replenish any amount withdrawn on the faithful performance bond, and at no point did GIAA ever make such a demand.  Taken together, these facts are more than enough to conclude the Arbitration Panel was "arguably construing" the Main Concession Agreement in issuing its decision.

[28]    GIAA insists that since DFS bundled the faithful performance bonds into one instrument, it was DFS that allowed for the entire Citibank bond to cover breaches of any of its contracts with GIAA.  *See* Appellant's Br. at 12-13.  To support this claim, GIAA cites to emails exchanged by Jean Meno Arriola (Airport Services Manager) and Kenneth Ng (DFS Treasurer)

discussing the bond and the final language of the bond agreement. However, nothing in the email chain between Arriola and Ng suggests either party wished to change the terms of the Main Concession Agreement. The only issue being discussed is having one financial instrument cover both contracts; nowhere is it said that by creating one letter of credit, the entire amount of the pooled funds can be used for an individual contract. *See* RA, tab 13 (Decl. Jay Trickett), Ex. 3 at 169-73 (Joint List Agreed Docs.). It is the same with the final language of the letter of credit agreement; it is consistent with one instrument being used to cover multiple obligations. At the very least, all these facts do not defeat the claim that the Arbitration Panel was "arguably construing" the Main Concession Agreement in issuing its ruling. Under this standard, it does not matter if the panel "made a serious mistake or committed grievous error"; all that is required is that the award "contains the honest decision of the arbitrators, after a full and fair hearing of the parties." *PacifiCare*, 2004 Guam 17 ¶ 16 (quoting *Sumitomo Constr. Co. v. Zhong Ye, Inc.*, 1997 Guam 8 ¶ 10).

[29]    This last observation is especially notable. The Arbitration Panel heard the above arguments and ruled against GIAA. RA, tab 13 (Decl. Jay Trickett), Ex. 7 at 1-4 (Order Denying Mot. Dismiss, Dec. 10, 2015). GIAA is relitigating the arguments it made to the Arbitration Panel, now to the courts. Reversing the Panel's decision when this matter has been heard and decided by the Panel would cut against the very purposes of arbitration. *See Guam YTK II*, 2019 Guam 12 ¶ 25 (explaining this court's reluctance to review matters already decided by an arbitration panel). Again, since the parties agreed the disputes under the Main Concession Agreement would be subject to arbitration under AAA rules, GIAA agreed to arbitrate arbitrability. Therefore, courts could set aside the Panel's findings on this matter only in the narrowest of circumstances. *See id.* ¶ 27; *PacifiCare*, 2004 Guam 17 ¶ 16.

**[30]**     Curiously, GIAA says that its petition to vacate the award "is not a challenge to the arbitrators' determination of their own jurisdiction." Appellant's Br. at 35.  GIAA's position is that the Panel erred when it "proceeded to manufacture an arbitrable dispute under the Main Concession Agreement that did not exist and resolve a core dispute arising under the Mama Bear Agreement." *Id.*  As DFS points out, this line of reasoning is problematic. *See* Appellee's Br. at 29-30 (May 4, 2022).  The Arbitration Panel determined that it did have jurisdiction and that the Main Concession Agreement governs the current dispute.  RA, tab 13 (Decl. Jay Trickett), Ex. 7 at 1-4 (Order Denying Mot. Dismiss).  If GIAA is not challenging that finding, then there is little for us to review because merit issues are nearly exclusively within the purview of an arbitration panel. *See PacifiCare*, 2004 Guam 17 ¶¶ 16-17.  Therefore, GIAA's argument must be about jurisdiction; albeit, one that it already presented to the Arbitration Panel.

**[31]**     We end this section by noting none of the cases cited by GIAA on arbitrators exceeding their jurisdiction support its arguments.  Two of the main cases GIAA relies on are *Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467 (Ct. App. 2020), and *Banc of California, National Ass'n v. Superior Court of Los Angeles*, 284 Cal. Rptr. 3d 484 (Ct. App. 2021), both of which, it argues, help show why the arbitrators here exceeded their authority.  Appellant's Br. at 40.  Yet, everyone in this case agrees that arbitrators exceed their jurisdiction if they arbitrate a dispute that is not arbitrable.  Everyone agrees that matters relating to the Mama Bear Agreement are not arbitrable.  Everyone agrees that matters relating to the Main Concession Agreement are arbitrable.  There is only one disagreement: whether the Main Concession Agreement has been implicated by GIAA's actions.  The Arbitration Panel found the Main Concession Agreement had been breached, and upon our review of the facts, we cannot say the Panel was not at least

arguably construing that agreement in making its determination. Therefore, we have no grounds to disturb the Arbitration Award.

### 2. The Arbitration Panel made no determinations affecting the rights and obligations of the parties regarding the Mama Bear Agreement

[32]   Moving to its second claim, GIAA asserts the Arbitration Panel made determinations under the Mama Bear Agreement, proving they exceeded their powers. Specifically, GIAA argues the Panel found (1) "the disputed funds in the [letter of credit] were not available under the Mama Bear Agreement"; (2) "that GIAA drew down on the funds pursuant to the Main Concession Agreement and not the Mama Bear Agreement"; and (3) "that GIAA was only entitled to holdover rent (under the Mama Bear Agreement) in a maximum amount of $250,000." Appellant's Br. at 36 (emphasis and citations omitted). These claims shall be addressed in turn.

[33]   To this first argument, the Panel had to find that the funds were not available under the Mama Bear Agreement in some sense. This is because the Main Concession Agreement provided that it could be amended in writing by the parties. Accordingly, the Panel had to determine whether there was *any* written amendment to the Main Concession Agreement. Thus, its only analysis of the Mama Bear Agreement was to determine if it modified the provisions at issue in the Main Concession Agreement. The Panel determined that it did not.

[34]   GIAA claims the mere act of considering whether the Mama Bear Agreement modified the Main Concession Agreement deprived the Arbitration Panel of authority to resolve the dispute. We disagree. Following GIAA's logic, it is hard to say how any provision of the Main Concession Agreement could go to arbitration, as either party could claim the Mama Bear Agreement is implicated. To quote GIAA's own brief, "the mere mention of a contract does not mean the dispute relates to it in any substantive sense. If it did, a party could make any contract relate to a dispute simply by mentioning it." Appellant's Reply Br. at 13 (Nov. 17, 2022)

(quoting *Moritz*, 268 Cal. Rptr. 3d at 474). The Arbitration Panel did not exceed its authority in reviewing the Mama Bear Agreement for the limited purpose of determining whether it modified provisions of the Main Concession Agreement. Crucially, this finding does not affect the proposition that GIAA's actions were allowable under the Mama Bear Agreement. The Arbitration Panel found, and we agree, only that the Mama Bear Agreement did not change the rights and obligations of the parties under the Main Concession Agreement.

[35]    On GIAA's second point, the Arbitration Panel did determine that GIAA's drawdown request was made under the Main Concession Agreement. This finding was based on GIAA's own letter to Citibank. RA, tab 3 (Decl. Michael Pangelinan), Ex. 1 at 13-14 (Arbitration Award). The Panel merely noted that this letter references the Main Concession Agreement, not the Mama Bear Agreement. *Id.* at 14. GIAA asserts that this was only a "technical formatting requirement." Appellant's Br. at 15. However, that Citibank insisted upon this "technical formatting requirement" could itself be proof that the Main Concession Agreement was implicated. Put another way, it could be the case that the Mama Bear Agreement provided additional authority to draw down on the letter of credit. However, that additional authority does not take away the fact that such a drawdown could also implicate the Main Concession Agreement, over which the Panel did have authority to adjudicate disputes.

[36]    Finally, GIAA's claim that the Panel held it could recover only $250,000 for violations under the Mama Bear Agreement misses the mark. DFS conceded that since there is a $250,000 faithful performance bond requirement under the Mama Bear Agreement, this amount could be subtracted from the just over $2 million GIAA drew down from the bond. RA, tab 3 (Decl. Michael Pangelinan), Ex. 1 at 14 (Arbitration Award). Nowhere did the Panel conclude that

GIAA could draw down that amount only under the Mama Bear Agreement, only that DFS was not contesting $250,000 of the drawdown.

[37]    Thus, none of GIAA's examples are instances where the Arbitration Panel ruled on the rights and obligations of the parties under the Mama Bear Agreement. Instead, GIAA is merely repeating the same arguments it made to the Arbitration Panel which rendered an adverse ruling against it. GIAA has not convinced us that the Panel "exceeded their powers" or that it manifestly disregarded the law in its ruling. The facts are such that the Arbitration Panel could find that it had jurisdiction and agree to arbitrate the dispute.

### 3. The Arbitration Award does not create a conflict with the potential outcome of the Government Claims Action

[38]    GIAA posits the ruling of the Arbitration Panel "directly conflicts with and purports to overrule [the] Claim Decision" issued by GIAA. Appellant's Br. at 37. We disagree. GIAA argues, and it could be true, that under the Mama Bear Agreement, it was entitled to the amount it drew down on the Citibank letter of credit. This does not change the possibility its actions violated the Main Concession Agreement. Using GIAA's logic, DFS could claim that GIAA's Claims Act decision impermissibly infringes upon the jurisdiction of the arbitrators under the Main Concession Agreement. After all, GIAA drew down money from a letter of credit largely created by the Main Concession Agreement.

[39]    Though the funds involved in the Arbitration Actions and the Government Claims Action may be the same, the rights to the funds involve two separate and distinct contracts. GIAA and DFS agreed to arbitrate one contract while submitting to the courts of Guam for the other. That was their decision when signing both contracts. Here, a competent body—the Arbitration Panel—determined DFS had a right to the funds according to the Main Concession Agreement. Whether the Mama Bear Agreement accords GIAA a right to these funds under the Mama Bear

Agreement is an issue that is before the Superior Court. Thus, the potential for diverging decisions, though perhaps inefficient, is not inconsistent and is in accordance with GIAA's and DFS's decisions when agreeing to both the Main Concession Agreement and the Mama Bear Agreement.

## B. The Panel Did Not Err in the Remedies It Prescribed

[40]    In addition to the decision itself, GIAA also argues the Arbitration Panel erred in the remedies it awarded to DFS. GIAA asserts that the Government Claims Act barred the Panel from awarding pre- and post-judgment interest to DFS. Appellant's Br. at 42. However, as even GIAA admits, such awards are not an issue when there is "an arbitration agreement under which sovereign immunity protecting the government is not implicated." *Id.* at 42-43. Thus, GIAA merely repeats its argument that if the Panel did not have authority to arbitrate the dispute, it could not have had authority to issue remedies allowed only under arbitration. Yet, as discussed above, there is an adequate basis for finding the Arbitration Panel acted within its authority. There is no basis for finding a manifest disregard of law with respect to the remedies prescribed by the Panel.

[41]    As an initial matter, we have held that sovereign immunity is waived "when the government entity at issue has a sued-and-be-sued clause and has 'cast off the cloak of sovereign and assumed the status of a commercial enterprise.'" *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 10 & n.2 (citations omitted). This waiver includes waiving the "no-interest rule" which traditionally protects governments from having to pay pre- and post-judgment interest. *Id.* GIAA has, as part of its enabling statute, a sue-and-be-sued clause. 12 GCA § 1105(h) (2005). We have already all but said this provision waives sovereign immunity for GIAA specifically. *See DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 23

n.3. We shall clearly say so now: As GIAA has a sue-and-be-sued clause in its enabling statute, when it acts as a commercial entity, it has cast off the cloak of sovereign immunity in its contractual dealings.[4]

[42]    GIAA's remaining argument against the award of pre- and post-judgment interest centers on our Opinion in *Guam YTK Corp. v. Port Authority of Guam*, 2019 Guam 12.  True, in that Opinion, we cautioned that "[a]n arbitration award that grants damages in violation of statutory provisions, such as sections 6105 and 6301 of the Government Claims Act, may . . . be subject to vacatur under 7 GCA § 42A701(b), assuming the standards under that statute have been met." *Guam YTK II*, 2019 Guam 12 ¶ 24.  Yet, this statement is unavailing to GIAA.  Section 6301 is inapplicable because we have held that "5 GCA § 6301(a)[] does not govern contract cases, but rather, it governs tort cases only." *Sumitomo*, 2001 Guam 23 ¶ 18.  "It is well-settled that 'an arbitration agreement is a matter of contract . . . .'" *Guam YTK I*, 2014 Guam 7 ¶ 22 (quoting *Brown v. Dillingham Constr. Pac. Basin Ltd.*, 2003 Guam 2 ¶ 16).  As for section 6105, we have clarified in the past "[b]y entering into an agreement referring disputes to arbitration, the Government is bound by the provisions of such agreement as any other party would, and claim of sovereign immunity is unavailing to prevent enforcement of the agreement." *PacifiCare*, 2004 Guam 17 ¶ 13 n.2.

[43]    Moreover, a successful claim against the award of interest would have to be made in the narrow confines of a 7 GCA § 42A701(b) review. *Guam YTK II*, 2019 Guam 12 ¶¶ 27-29.  First, it is undisputed that both AAA's rules and 7 GCA § 42A405 allow for interest to be awarded in

---

[4] This is not to say the Government Claims Act or sovereign immunity is wholly inapplicable to GIAA. First, nothing in this Opinion deals with matters of tort, so there are no changes to those kinds of actions.  Second, our holding here is simply that GIAA shall be bound by its contractual obligations like any other party; if GIAA enters a contract providing a party a remedy proscribed by the Government Claims Act, the contract will prevail.  At the same time, the procedures set forth in the Government Claims Act for making a claim against GIAA will still apply to those claims unless otherwise stated by the contract.

arbitration. Therefore, the Panel did not exceed its authority on this issue. Second, GIAA has not identified the "well defined, explicit, and clearly applicable" law precluding the award of interest to DFS in arbitration. *See Asia Pac. Hotel*, 2015 Guam 3 ¶ 23 (quoting *PacifiCare*, 2004 Guam 17 ¶ 46). As explained above, GIAA is not entitled to sovereign immunity in its contract dealings, and it gives no other basis to find that interest could not be awarded. Thus, there has not been a manifest disregard of law with respect to the award of pre- and post-judgment interest, and this decision must be confirmed.[5]

[44]    The issue of attorney's fees can also be dealt with swiftly. The Main Concession Agreement provides that in a dispute between the parties, the "prevailing party shall be entitled to reasonable attorney's fees." RA, tab 13 (Decl. Jay Trickett), Ex. 3 at 47 (Joint List Agreed Docs.). This court has clarified that "the doctrine of sovereign immunity is not in any way implicated or threatened by the Government's compliance with its contract obligations." *PacifiCare*, 2004 Guam 17 ¶ 13 n.2 (quoting *United States v. Bankers Ins. Co.*, 245 F.3d 315, 320 (4th Cir. 2001)). Allowing GIAA to invoke sovereign immunity as a shield against attorney's fees would "essentially permit [GIAA] to selectively hide behind the cloak of sovereign immunity when doing so would serve its litigation objectives." *Guam YTK I*, 2014 Guam 7 ¶ 41.

[45]    GIAA's only rebuttal to this point is to fall back on its position that the Main Concession Agreement was not implicated by its actions, and so the arbitration was unlawful. Appellant's Br. at 42-43. The Arbitration Panel did not exceed its powers by ruling on this dispute, and no provision of the Government Claims Act prevents the award of attorney's fees in this case. Thus, there is no reason to set aside the Panel's award, and it must be confirmed. DFS is entitled

---

[5] Because we find that, after considering the merits, DFS is entitled to pre- and post-judgment interest, there is no need to address DFS's waiver arguments. As the waiver argument is immaterial, we deny both GIAA's and DFS's motions for judicial notice as moot.

to the *reasonable* attorney's fees incurred litigating this matter in the trial court below and on appeal. *See Mobil Oil Guam Inc. v. Tendido*, 2004 Guam 7 ¶ 49.

[46]     There is one final matter to address: DFS's request for this court to order GIAA to satisfy the judgment within 21 days of issuing this Opinion. Appellee's Br. at 57. As pointed out by GIAA, DFS cites no case, statute, or rule authorizing this court to carry out this request. Reply Br. at 27. This portion of DFS's brief is therefore in violation of Guam Rule of Appellate Procedure 13(b),[6] which requires arguments to be supported by authority. Accordingly, this court may treat the argument as abandoned, and no further analysis is needed. *See People v. Roberson*, 2017 Guam 18 ¶ 10.

## V.  CONCLUSION

[47]     In 2002, GIAA and DFS agreed to settle disputes between them concerning the Main Concession Agreement through arbitration. Courts may disturb such an agreement only in extraordinary circumstances, none of which are present here. GIAA repeats again and again the claim that since it was *its* allegation of a breach of the Mama Bear Agreement which led to the present dispute, only the Mama Bear Agreement is implicated. What this fails to recognize is that the Mama Bear Agreement's faithful performance bond provision was only $250,000. The fundamental fact of this case is that without the Main Concession Agreement, the letter of credit would not have been large enough to satisfy GIAA's drawdown demand. No matter how it frames this dispute, GIAA cannot escape this, and with it, the consequence that the Main Concession Agreement has—at least arguably—been implicated. The Arbitration Panel's decision on the breach of the Main Concession Agreement must be confirmed.

---

[6] GRAP 13(b) extends GRAP 13(a)(9)—which by its terms is applicable only to the Appellant's brief—to the Appellee's brief as well.

**[48]**    Therefore, we **AFFIRM** the Decision and Order of the Superior Court confirming the Arbitration Award.  In doing so, we echo that Award by saying nothing in this Opinion should be construed as affecting the rights and obligations of the parties regarding the Mama Bear Agreement.  The present case deals only with the Main Concession Agreement, and that is the only contract we deal with today.  This case is **REMANDED** to the Superior Court for a determination of the amount of *reasonable* attorney's fees incurred by DFS in this litigation and interest due.


|  |  |
|:---:|:---:|
| /s/ | /s/ |
| KATHERINE A. MARAMAN | JOSEPH N. CAMACHO |
| Associate Justice | Justice *Pro Tempore* |


| |
|:---:|
| /s/ |
| F. PHILIP CARBULLIDO |
| Presiding Justice |